# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**ELOY C. SANDOVAL**,

        Plaintiff,

vs.                                                  **No. CIV 00-578 LCS**

**NEW MEXICO TECHNOLOGY GROUP
LLC d.b.a. NEWTEC,**

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court *sua sponte*. It is a well-known principle that the Court may examine its subject matter jurisdiction at any time in the proceedings. *See* 28 U.S.C. §1447; *see also Tuck v. United Services Auto. Ass'n*, 859 F.2d 842, 844 (10th Cir. 1988), cert. denied, 489 U.S. 1080 (1989).[1] After careful consideration of the parties' responses, arguments and the relevant law, the Court finds that this case should be remanded to state court.

## I.   BACKGROUND

Plaintiff Eloy Sandoval is a resident of New Mexico. He filed a complaint against New Technology Group (NewTec), a Delaware corporation with its principal place of business in New Mexico. NewTec is a government contractor that provides a wide range of services to primarily the United States Army at White Sands Missile Range. The complaint was filed in the Twelfth Judicial District Court, Otero County, New Mexico. It alleged four different counts which include, a breach of contract claim, a breach of implied contract of good faith and fair dealing claim, an intentional or negligent representation claim, and a wrongful discharge claim. In Count IV, the Plaintiff alleged

---

[1]    The Tenth Circuit found, post trial, that the court lacked jurisdiction. This Court believes that it would be a needless waste of time and money if this issue was not resolved expeditiously. *See Laughlin v. K-Mart Corp.*, 50 F. 3d 871, 873 (10th Cir. 1995)

that he was wrongfully discharged. Count IV of the complaint reads as follows:

> Plaintiff's discharge by Defendant was in violation of the public policy of the state of New Mexico, which encourages employees to report unsanitary and unhealthy, working conditions. See e.g. Occupational Health and Safety 50-9-1 et seq., and specifically including 50-9-5 as well as its federal counterpart, the Occupational Safety and Health Act of 1970 (84 Stat. 1590), 29 U.S.C. Sections 651-678 (1997). . . Further, plaintiff's discharge by Defendant was in violation of the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of an employee's own choosing and to engage in other concerted activities for the purpose of collective bargaining such as the right to organize a union. See National Labor Relations Act, 29 U.S.C. Sections 151 et seq., the Labor-Management Relations Act, 29 U.S.C. Sections 141 et seq. and the Labor-Management Reporting and Disclosure Act, 29 U.S.C. Sections 401 et seq. Plaintiff was primarily seeking to further the public interests and purposes of the OSHA laws, the right to collective bargaining and the rights under the Service Contract Act of 1965. Plaintiff was attempting to promote the public safety of the citizens who would come into contact with or use any facility maintained or operated by Defendants as well as protect the rights of the employees working for Defendant. Additionally, plaintiff's discharge by Defendant was in violation of the Service Contract Act of 1965 (Public Law 89-286) 41 U.S.C. 353(c) which prohibits paying an employee under a successor contract less than the wages and fringe benefits provided for in a collective-bargaining agreement to which Plaintiff would have been entitled had he stayed employed by DynCorp, in violation of the public policy of this state. All of these issues were a motivating factor in Plaintiff's wrongful discharge. (Pl. Comp. at 6-7).

The Defendant filed a timely petition for removal from state court to this court alleging that "because Plaintiff's wrongful termination claim arises under the laws of United States, this Court has original jurisdiction under 28 U.S.C. Sec. 1331." (Notice of Removal at 1-2). After removal, I entered an Order to Show Cause on April 11, 2001 instructing the parties to show cause why this case should not be remanded to state court for lack of subject matter jurisdiction. The parties submitted responses to the order to show cause and were given the opportunity to argue before the Court. The Plaintiff argued that all claims alleged in the complaint were state law claims and that he did not bring any action pursuant to any federal statutes. The Defendant argued that the Plaintiff specifically alleged federal statutes within his complaint thus conferring federal question jurisdiction and that they were not in terms of a violation of New Mexico's public policy.

## II.    <u>ANALYSIS</u>

Federal Removal Jurisdiction is statutory in nature and must be strictly construed. *See Shamrock Oil & Gas v. Sheets,* 313 U.S. 100, 108 (1941). Where there is no diversity of citizenship between the parties, as in this case, the propriety of removal turns on whether the case falls within the original "federal question" jurisdiction of United States district courts under 28 U.S.C. § 1331 (1976 ed., Supp. V). The presence or absence of federal question jurisdiction in any specific case is governed by the "well-pleaded complaint" rule. That rule states that a complaint originally filed in state court cannot be removed to federal court unless federal jurisdiction appears from the face of a "well-pleaded complaint." *Gully v. First National Bank*, 299 U. S. 109 (1936); *see also Louisville v. Mottley*, 211 U. S. 149 (1908). The rule has been stated by the Supreme Court as follows: "'[W] hether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute, . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.'" *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U. S. 1, 10 (1983) (quoting *Taylor v. Anderson*, 234 U. S. 74, 75-76 (1914)). Under this rule, the plaintiff may avoid federal jurisdiction by exclusive reliance on state law in his complaint. *See Caterpillar Inc. v. Williams*, 482 U. S. 386, 392 (1987). Furthermore, a defense that raises a federal question is inadequate to confer federal jurisdiction. *See Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

In coming to its decision, the Court has searched the complaint for claims arising under the Constitution or a law or treaty of the United States. Counts I, II, and III clearly allege state claims which exclusively rely on state law. However, Count IV, titled "wrongful discharge," states that the Plaintiff's discharge by Defendant was in violation of New Mexico public policy. It subsequently quotes five federal statutes: the Occupational Safety and Health Act (OSHA), the National Labor

Relations Act (NLRA), the Labor-Management Relations Act (LMRA), the Labor-Management Reporting and Disclosure Act, and the Service Contract Act.

First, the Plaintiff alleges that he was discharged by the Defendant in violation of the federal OSHA laws which encourage employees to report unsanitary and unhealthy working conditions. *See* 29 U.S.C. §§ 651-678 (1997). This federal based OSHA claim is not properly before this court because there is no federal cause of action for an employer's retaliatory discharge of an employee who has filed a complaint or instituted or caused to be instituted any proceeding under or related to the OSHA. *See* 29 U.S.C. §660(c)(2).[2] The Plaintiff also cites to state OSHA public policy. The provision of the New Mexico Occupational Health and Safety Act prohibiting discrimination against employees for filing safety complaints constitutes a statement of public policy, the violation of which may be used to establish claim for retaliatory discharge. NMSA 1978, §50-9-25, subd. A. Although jurisdiction does not exist with respect to the Plaintiff's federal OSHA claim, the Plaintiff's state OSHA claim is appropriate for a classic *Vigil v. Arzola* analysis. *See Vigil v. Arzola*, 102 N. M. 682, 689 (Ct. App. 1983), *rev'd in part on other grounds*, 101 N. M. 687 (1994), *overruled in part on other grounds*, *Chavez v. Manville Products Corp.*, 108 N. M. 643 (1989).

Second, the Plaintiff alleges that he was discharged by Defendant in violation of the Service Contract Act of 1965, 41 U.S.C. 353(c), which prohibits paying an employee under a successor contract less than the wages and fringe benefits provided for in a collective-bargaining agreement. The Service Contract (SCA) provides that "[n]o contractor or subcontractor under a contract . . . shall pay any service employee under such contract less than the wages and fringe benefits, including accrued wages and fringe benefits, and any prospective increases in wages and fringe benefits provided for in a collective-bargaining agreement . . . ." 41 U.S.C. §353(c). The complaint

---

[2]      In addition to the fact that there is no federal cause of action under OSHA, the Defendant stipulated at the April 23, 2001 hearing that no such cause of action exists and that jurisdiction is lacking pursuant to this statute.

4

states that the "plaintiff's *discharge* by Defendant was in violation of the Service Contract Act. . " (Pl. Compl. at 7) (emphasis added). It does not allege that the Plaintiff was entitled to wages and fringe benefits received less than the wages and fringe benefits provided for in a collective-bargaining agreement. Nor does it seek reimbursement of these funds. Instead it alleges Plaintiff was discharged in violation of the act, which is against the public policy of the state of New Mexico. In addition, at least two federal district courts have concluded that the Secretary of Labor has exclusive jurisdiction to enforce the SCA through administrative proceedings. *See Oji v. PSC Environmental Management Inc.*, 771 F.Supp. 232 (N.D.Ill.1991); *see also Nichols v. Mower's News Serv., Inc.*, 492 F.Supp. 258 (D.Vt.1980). This Court agrees with the courts in *Oji* and *Nichols*, *see supra text*, that the SCA neither explicitly nor implicitly authorizes a private cause of action. Furthermore, I agree that the Secretary of Labor, and not the courts, has exclusive jurisdiction to enforce the SCA. *See* 41 U.S.C. §353(a). Therefore, this Court does not have subject matter jurisdiction over this case pursuant the SCA.

The remaining federal statutes referred to within the complaint are all federal labor laws. The complaint states that "plaintiff's discharge by Defendant was in violation of the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of an employee's own choosing and to engage in other concerted activities for the purpose of collective bargaining such as the right to organize a union. See National Labor Relations Act, 29 U.S.C. Sections 151 et seq., the Labor-Management Relations Act, 29 U.S.C. Sections 141 et seq. and the Labor-Management Reporting and Disclosure Act, 29 U.S.C. Sections 401 et seq." (Pl. Compl. at 7). The wording of this claim is verbatim from section 7 of the National Labor Relations Act. *See* 29 U.S.C. §157. Thus, the fundamental issue of this case is whether the above sentence is sufficient to confer subject matter jurisdiction on the federal court.

District courts have original jurisdiction over all actions arising under the Constitution, laws or treatises of the United States. *See* 28 U.S.A. Sec. 1331. "Although the constitutional meaning of

5

'arising under' may extend to all cases in which a federal question is 'an ingredient' of the action, *Osborn v. Bank of the United States, 9 Wheat. 738*, 823 6 l.Ed. 204 (1824), we have long construed the statutory grant of federal-question jurisdiction as conferring a more limited power." *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 807-08 (1986). The more familiar definition of the statutory "arising under" limitation is Justice Holmes' statement, "'[a] suit arises under the law that creates the cause of action.'" *See Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal*., 463 U. S. 1, 26 (1983) (quoting *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916)). However the Supreme Court has further developed the definition to include a cause of action that poses a "substantial federal question." *Id.* Courts have often held that "a case 'arises under' federal law where the vindication of a right under state law necessarily turned on some construction of federal law." *Franchise Tax Bd.*, 463 U. S. at 9 (citing *Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921)).

First, this Court looks to see if the complaint alleges a claim arising under a federal law that creates the cause of action. *See Franchise Tax Bd.*, 463 U. S. at 26. Though the Plaintiff's allegations are far from clear, they definitely do not state a federally-created cause of action. The complaint alleges that "plaintiff's discharge by Defendant was in violation of the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of an employee's own choosing and to engage in other concerted activities for the purpose of collective bargaining such as the right to organize a union." *See* National Labor Relations Act, 29 U.S.C. §157. Sections 157 and 158 of the NLRA are intended to insure employees' rights to form independent opinion or decisions, free from undue influence, regarding their allegiance to labor organizations. *See* 29 U.S.C. §§ 151 et seq. There is nothing in either statute setting out a private cause of action. The Court has gone to great lengths to examine the NLRA, in its entirety, for a cause of action that could arise pursuant to the allegations in the

complaint. However, the complaint simply does not assert any particular statutory entitlement for

the relief it seeks. Thus, the law that creates the cause of action is state law, and original jurisdiction

is unavailable unless it appears that some substantial, disputed question of federal law is a necessary

element of the well-pleaded state claim, or that the claim is "really" one based on federal law.

The Court now reads the face of the complaint in light of the "substantial federal question"

test and whether a right under state law turns on some construction of federal law. *See Franchise

Tax Bd.*, 463 U. S. at 9 (citing *Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 41 S.Ct. 243,

65 L.Ed. 577 (1921)). "Substantial federal question" jurisdiction is a theory where "a case arises

under federal law where the vindication of a right under state law necessarily turned on some

construction of federal law." *See Franchise Tax Board*, 463 U. S. at 9.[3]

Although this broad definition, when applied on a case-by-case basis, would indeed

augment federal courts' jurisdiction to include a wide range of state-based claims that merely

implicate federal law statutes, the actual holding in *Franchise Tax Board* demonstrated that this

interpretation must be read with caution. *See Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478

U.S. 804, 808, 104 S.Ct 3229 (1986). Notwithstanding the fact that the central issue presented in

*Franchise Tax Board* turned on the meaning of the Employee Retirement Income Security Act of

1974, 29 U.S.C. § 1001 *et seq.*, the Court nevertheless concluded that federal jurisdiction was

lacking.

In *Merrell Dow*, the Supreme Court elaborated on the meaning of this alternative form of

---

[3]        The Supreme Court referred to leading commentators and suggested that for purposes of § 1331
an action "arises under" federal law "if in order for the plaintiff to secure the relief sought he will be obliged to
establish both the correctness and the applicability to his case of a proposition of federal law." P. Bator, P.
Mishkin, D. Shapiro & H. Wechsler, Hart & Wechsler's The Federal Courts and the Federal System 889 (2d ed.
1973) (hereinafter Hart & Wechsler);  cf. *T.B. Harms Co., supra* ("a case may 'arise under' a law of the United
States if the complaint discloses a need for determining the meaning or application of such a law"). *Id.*

jurisdiction where an interpretation of a federal statute could "boot-strap" a state claim in federal court. The damages sought in *Merrell Dow* were based on common law theories of negligence, breach of warranty, strict liability, fraud, and gross negligence. Specifically, the complaint alleged "misbranding" of a drug in violation of the Federal Food, Drug, and Cosmetic Act (FDCA) thus representing a "rebuttable presumption" of negligence and the "proximate cause" of the injuries. *Id.* at 804. After dispensing with the claim of whether there was a federal cause of action, the Supreme Court focused on the petitioner's argument contending "that the case represented a straightforward application of the statement in *Franchise Tax Board.* The crux of the petitioner's argument asserted that federal-question jurisdiction is appropriate when 'it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims.'" *Merrell Dow,* 478 U.S. at 813 (citing *Franchise Tax Board*, 463 U.S., at 13, 103 S.Ct., at 2848). The Court responded by stating that "*Franchise Tax Board* did not purport to disturb the long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Id.*[4] The Court noted that *Franchise Tax Board* "candidly recognized the need for careful judgments about the exercise of federal judicial power in an area of uncertain jurisdiction." *Id.* at 814. The Court also stated that

> Given the significance of the assumed congressional determination to preclude federal private remedies, the presence of the federal issue as an element of the state tort is not the kind of adjudication for which jurisdiction would serve congressional purposes and the federal system. This conclusion is fully consistent with the very sentence relied on so heavily by petitioner. We simply conclude that the congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the

---

[4]        *See also*, *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 470, 77 S.Ct. 912, 928, 1 L.Ed.2d 972 (1957) (Frankfurter, J., dissenting) (defining inquiry as "the degree to which federal law must be in the forefront of the case and not collateral, peripheral or remote"); *Gully v. First National Bank,* 299 U.S. 109, 115, 57 S.Ct. 96, 98, 81 L.Ed. 70 (1936) ("[n]ot every question of federal law emerging in a suit is proof that a federal law is the basis of the suit").

presence of a claimed violation of the statute as an element of a state cause of action is insufficiently "substantial" to confer federal-question jurisdiction. *Id.*[5]

In the instant action, the Plaintiff claims in Count IV that he was discharged in violation of the public policy of the state of New Mexico which encourages the right to "self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of an employee's own choosing and to engage in other concerted activities for the purpose of collective bargaining . . . ." *See* Plaintiff's Compl. at 7 (citing the National Labor Relations Act, 29 U.S.C. §157). It is clear from the face of the complaint that Count IV alleges a wrongful discharge claim, purely a state cause of action. Under New Mexico state law, in order to establish a claim for wrongful discharge, the Plaintiff must prove (1) he was discharged because he performed an act that public policy has authorized or would encourage, and (2) that there was a causal connection between his actions and the retaliatory discharge by the employer. *See Shovelin v. Central N. M. Elec. Co-Op*, 115 N. M. 293 (1993) (*citing Chavez v. Manville Prods. Corp.*, 108 N.M. 643, 649-50, 777 P.2d 371, 377-78 (1989)). Count IV of the Plaintiff's complaint sets out this exact claim. It alleges that the Plaintiff engaged in the protected activity (the right to organize a labor organization) and that he was discharged as a result of his actions. In light of the Court's holding in *Merrell Dow*, "the presence of the federal issue as an element of the state tort is not the kind of adjudication for which jurisdiction would serve congressional purposes and the federal system." *Merrell Dow,* 478 U.S. at 813. Accordingly, I find that Count IV is insufficient to confer jurisdiction on this Court.

Defendant argues, however, that this case is directly controlled by *Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987), and *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557 (1968), on

---

[5]        The Tenth Circuit has held, in an unpublished opinion, that *Merrell Dow* is the controlling law with respect to invoking subject matter jurisdiction where the "vindication of a right under state law necessarily turn[s] on some construction of federal law." *See Ernzen v. Ernzen*, 105 F.3d 669,  1997 WL 7276 (10th Cir. Jan. 9, 1997)(citing *Franchise Tax Board*, 463 U.S. at 9).

the theory that Plaintiff's claim under the Labor Management Relations Act (LMRA), 29 U.S.C. §§141 *et seq.*, is completely preempted by federal law, thus conferring jurisdiction to this Court. I reject this argument for the several reasons.

First, section 301(a) of the LMRA, 29 U.S.C. § 185, applies to all "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . or between any such labor organizations." It seems the courts have not taken a restrictive view of *who* may sue under section 301 for violations of such contracts, or of *what* contracts are covered by section 301. *See*, *e.g.*, *Smith v. Evening News Assn.,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); *Lewis v. Benedict Coal Corp.,* 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960); *Retail Clerks v. Lion Dry Goods, Inc.,* 369 U.S. 17, 82 S.Ct. 541, 7 L.Ed.2d 503 (1962). However, the Supreme Court has intimated that not just any action relating to a contract within the coverage of section 301 arises exclusively under that section. *See United Auto Workers v. Russell*, 356 U.S. 634, 640-642 (1958). For instance, a state battery suit growing out of a violent strike would not arise under section 301 simply because the strike may have been a violation of an employer-union contract. *Id*.

The Plaintiff's wrongful discharge claim in this case does not allege that his discharge was in violation of a collective bargaining agreement. The complaint specifically asserts that he was discharged by Defendant in violation of section 7 of the NLRA. The fact that a claim states a violation of public policy based on the right to organize a union does not automatically predispose it to the sway of section 301. Accordingly, Plaintiff's wrongful discharge claim does not apply in light of the express language of section 301.

In addition, I find Defendant's argument unpersuasive in view of *Caterpillar*. The Supreme Court found that there was "an 'independent corollary' to the well-pleaded complaint rule . . . known as the 'complete pre- emption' doctrine." *Caterpillar*,  482 U.S. at 393 (*citing Franchise Tax Board*, 463 U.S. at 12). That corollary states that, ordinarily, a case may not be removed to

federal court on the basis of a federal defense such as federal pre-emption. However, under *Caterpillar*, the Court carved out an exception to this rule in the "complete pre-emption" doctrine. Under certain circumstances, "the Court has concluded that the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar*, 482 U.S. at 393 (*citing Metropolitan Life Insurance Co., supra,* at 65, 107 S.Ct., at 1547). In order for the Defendant's pre-emption argument to succeed, the claim must fit within this "complete pre-emption" doctrine definition.

This very issue was presented to the court for the southern district of Illinois. In *Pitchford v. Aladdin Steel, Inc.*, 828 F.Supp. 610 (S.D.Ill.1993), the plaintiff initially filed his complaint in Illinois state court alleging, *inter alia*, that "he was discharged for participating in efforts to unionize defendant's employees, and for reporting certain violations of OSHA to the Department of Labor." *Id.* at 611-612. The defendant filed a Notice of Removal based upon the allegations that the plaintiff's claims fell "within the ambit" of sections 7 and 8 of the NLRA, 29 U.S.C. §§ 157, 158, "and that the claims "ar[ose] under § 11(c) of the Occupational Safety and Health Act (OSHA), 29 U.S.C. § 660(c). *Id.* In determining whether the "complete preemption" doctrine supported removal to federal court, Chief Judge Stiehl examined whether sections 7 or 8 of the NLRA provided the plaintiff with a private right of action. The court determined that these statutory provisions, the same statutory provision relied upon by Plaintiff in this case, did not confer upon the plaintiff a private right of action under federal law. The court thus held that it "lacked subject matter jurisdiction over [the] retaliatory discharge suit based upon such claims." *Id.* at 613-614. Accordingly, the court remanded the action to state court.[6]

---

[6]    The Court of Appeals for the Third Circuit has limited the application of the "complete preemption" doctrine to situations where: (1) "the statute relied upon by the defendant as preemptive contains civil enforcement provisions within the scope of which the plaintiff's state claim falls." *Goepel v. Nat'l Postal Mail Handlers Union*, 36 F.3d 306, 311 (3d Cir.1994) (citing *Franchise Tax Board*, 463 U.S. at 24); and (2) there is "a

*Pitchford* determined that claims pursuant to section 301 of the LMRA would in fact give district courts jurisdiction over disputes involving collective bargaining agreements whereas claims pursuant to sections 7 and 8 do not. Section 301 allows a federal cause of action for "violations of contracts between an employer and a labor organization representing employees." *See* 29 U.S.C. § 185(a). On the other hand, sections 8(a)(1) and 8(a)(3) simply make it an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of that right, or to discriminate in regard to any term or condition of employment to discourage membership in such an organization. *See* 29 U.S.C. §§ 158(a)(1), 158(a)(3). Unlike cases arising under section 301 of the LMRA, sections 7 and 8 of the NLRA do not confer original federal court jurisdiction over actions within their scope. *See United Ass'n of Journeymen & Apprentices of Plumbing & Pipe Fitting Indus., Local No. 57 v. Bechtel Power Corp.*, 834 F.2d 884 (10th Cir.1987). The Supreme Court has considered it essential to the administration of the NLRA that determinations regarding the scope and effect of sections 7 and 8 "be left in the first instance to the National Labor Relations Board." *Garmon*, 359 U.S. at 244-45.[7] There is no initial cause of action provided for in federal court.

In this case, the Plaintiff does not rely on any contract within the scope of section 301. In fact, not only is there no collective bargaining agreement in existence between the Plaintiff and the

---

clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law." *Id.* (citing *Metropolitan Life*, 481 U.S. at 64). Thus, the "doctrine of complete preemption applies only when [these] two circumstances are present." *Id.* (citing *Allstate Ins. Co. v. The 65 Security Plan*, 879 F.2d 90, 93 (3d Cir.1989). In other words, only state claims that are "really" federal claims are removable to federal court. *Id.* at 311-312 (citing *Franchise Tax Board*, 463 U.S. at 13, 103 S.Ct. at 2848). These two prerequisites are not met in the instant action.

[7]     In *Ethridge*, the Ninth Circuit relied upon the distinction between cases arising under section 301 of the LMRA and cases arising under sections 7 and 8 of the NLRA to hold that state retaliatory discharge actions claimed to be preempted by the latter are not removable to federal court. *See Ethridge*, 861 F.2d at 1397.

12

Defendant, the Plaintiff does not allege in the complaint that one existed.[8] The connection between Plaintiff's cause of action, that the Defendant wrongfully discharged him for organizing a union, is too attenuated for me to say that it "arises under" section 301 of the LMRA.[9] The face of the complaint clearly relies on sections 7 and 8 thereby committing exclusive jurisdiction on the NLRB. *See Garmon,* 359 U.S. at 244-245.

With these principles in mind, sections 7 and 8 of the NLRA cannot "completely preempt" Plaintiff's state law claims because they do not provide the Plaintiff with a comparable federal cause of action which Plaintiff could have originally prosecuted in this Court. I find that Plaintiff's claims do not "arise under the Constitution, laws or treaties of the United States" within the meaning of 28 U.S.C. § 1331 and that this Court lacks subject matter jurisdiction over this case. Accordingly, removal of this case to this Court was improper and the case is ORDERED remanded to the Twelfth Judicial District Court, Otero County, New Mexico, pursuant to 28 U.S.C. § 1447(c). The Court will enter an appropriate order.

**IT IS FURTHER ORDERED** that pursuant to 28 §1447(c), the Court finds that attorney fees are inappropriate in this case. Section 1447(c) states that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." *See* 28 U.S.C. §1447(c). Determination of these fees are within the discretion of the trial court. *See Suder v. Blue Circle, Inc.*, 116 F.3d 1351, 1352 (10th Cir.1997). The Court finds that attorney fees are inappropriate because of the closeness of the

---

[8]      Section 301 is titled "Suits by and against labor organizations." 29 U.S.C. § 185.

[9]      In a recent case, the New Mexico District Court remanded a case to state court finding that although the existence of a collective bargaining agreement will probably factor into the analysis of the plaintiff's reasonable expectations, the CBA is not inextricably intertwined with the plaintiff's implied contract claim so that LMRA section 301 could preempt it. *See Garcia v. Sandia National Laboratories*, No. 00-1513 JP/DJS (Jan. 29, 2001).

issues in this case and because the issue was raised *sua sponte*. Therefore, for those reasons, the Court exercises its discretion and finds that attorney fees and costs are inappropriate and they will therefore be denied.

     **IT IS SO ORDERED.**

_____

**LESLIE C. SMITH**
United States Magistrate Judge

14